# In the United States Court of Federal Claims

No. 14-307C
(Filed Under Seal: November 19, 2014)
(Reissued for Publication: November 26, 2014)*

| | |
|---|---|
| SAVANTAGE FINANCIAL SERVICES, INC., Plaintiff, v. THE UNITED STATES, Defendant. | Bid Protest; Motion to Vacate; Motion for Leave to File an Amended Complaint; Foman v. Davis; Futility; Ripeness |

Timothy F. Noelker, St. Louis, MO, for plaintiff.

William J. Grimaldi, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

In an August 26, 2014 Opinion and Order, the court dismissed this bid protest as moot. The following day, plaintiff Savantage Financial Services, Inc. moved to vacate the court's decision and for leave to amend its complaint. Alternatively, plaintiff moved to amend the protective order to allow it to retain protected information for additional time and to use that protected information in subsequent, related protests. Defendant opposes plaintiff's motions. For the reasons set forth below, the court grants in part and denies in part plaintiff's motion to vacate the court's decision and amend its complaint, and denies as moot plaintiff's motion to amend the protective order.

## I. BACKGROUND

Plaintiff is one of five companies that sell financial management software systems and related services to the federal government. United States Immigration and Customs Enforcement ("ICE"), a component of the United States Department of Homeland Security ("DHS"),

---

* The court provided the parties with an opportunity to suggest redactions to this ruling, but in a November 25, 2014 joint status report, they indicated that no redactions were necessary.

negotiated both a contract with plaintiff for its software and services and a license for all other DHS components to use plaintiff's software and services. As of April 2014, plaintiff's software and services were used by the following DHS components: ICE, United States Citizenship and Immigration Services, the National Protection and Programs Directorate, the Science and Technology Directorate, the Office of Health Affairs ("OHA"), United States Visitor and Immigrant Status Technology, and the Office of the Secretary and Under Secretary for Management.

Other DHS components used financial management software and related services from one of the four other companies; of particular importance in this protest is the use of SAP's software by United States Customs and Border Protection ("CBP"). CBP's license with SAP, executed prior to the creation of DHS, did not contemplate that the software would be used by any entity other than CBP and did not grant CBP the authority to license the software to another entity.

Over the previous decade, DHS twice attempted to implement a department-wide update of its financial management software systems. The first effort was abandoned in 2006 and the second effort was cancelled in early 2011. DHS's current plan is to modernize its financial management software systems on a decentralized, component-by-component basis.

In early 2013, plaintiff began to hear rumors that OHA was planning to switch from its software to the software offered by SAP, and that OHA, as the smallest DHS component, was to serve as the prototype for switching all DHS components to the SAP software. Plaintiff investigated these rumors, but was unable to obtain confirmation from DHS.

Plaintiff eventually obtained concrete information reflecting that OHA had ceased using its software. It interpreted this information as evidence that OHA was proceeding under CBP's existing license with SAP, and by doing so, had obtained new financial management software and services via a sole-source procurement. Plaintiff also understood this information to mean that OHA's use of SAP's software pursuant to CBP's license was the result of CBP being treated as a shared service provider. However, plaintiff was unable to find any evidence that OHA complied with the relevant Office of Management and Budget ("OMB") requirements by conducting an alternatives analysis or preparing a justification supporting its use of SAP's software through CBP.

In the absence of any evidence that OHA conducted a competition to acquire SAP software and associated services, plaintiff filed this bid protest. In its complaint, plaintiff set forth three claims for relief, all of which concerned the migration of OHA from its software to SAP's software. In addition, the relief plaintiff sought in its complaint was expressly limited to preventing OHA from migrating from ICE to CBP without DHS first complying with the relevant statutory and regulatory requirements. After plaintiff filed its motion for judgment on the administrative record, OHA initiated corrective action by cancelling the proposed migration of its financial management software and related services from ICE to CBP, and proclaiming its

intent to re-evaluate its options for obtaining the required services. Defendant accordingly moved to dismiss the protest as moot. The court granted defendant's motion in its August 26, 2014 Opinion and Order, holding that because the claims and relief described in plaintiff's complaint pertained only to OHA's proposed migration, the corrective action described by defendant rendered plaintiff's protest moot.

The following day, plaintiff moved to vacate the court's decision and for leave to amend its complaint to "challenge the DHS actions and alleged justifications setting the stage for other planned component migrations." Mot. 4-5; see also id. at 1-2 (suggesting that DHS had a "larger plan to migrate many, if not all, of the DHS components to the SAP system used by CBP"), 6 ("DHS offices and components have already made procurement decisions and are proceeding with implementation of the SAP system through CBP–without ever holding a competition."); Pl.'s Resp. Mot. Dismiss 8 ("There can be no doubt that Savantage is challenging the DHS's practice of selecting a favored financial management system and attempting through different means to move DHS components–in every case those components that use the Savantage Altimate/FFMS system–to that favored system without adhering to [statutory and regulatory] requirements."). In the alternative, plaintiff requested that the court amend the protective order to allow it to retain protected information for additional time and to use that protected information in subsequent, related protests. The court directed defendant to respond to plaintiff's motions and provide affidavits or declarations from the responsible individuals addressing (1) whether the DHS components that use plaintiff's software have reached a final decision regarding the procurement of future financial management software systems and related services, (2) whether DHS made a decision to migrate all of its components to SAP's software by using CBP as a shared service provider, and (3) if DHS made such a decision, whether that decision has been reversed. Defendant accordingly responded to plaintiff's motion, attaching a declaration from Jeffrey Bobich, DHS's Director of Financial Management.

In his declaration, Mr. Bobich addressed the topics raised by the court, indicating that the DHS components that use plaintiff's software had not reached a final decision regarding the procurement of future financial management software systems and related services, and that DHS has never made a decision to migrate all of its components to SAP's software by using CBP as a shared service provider. Bobich Decl. ¶¶ 3, 10. Mr. Bobich also described DHS's financial modernization process. Id. ¶¶ 4-9. According to Mr. Bobich, the first step of this process is a DHS component's preparation of an alternatives analysis, which is "the main document that identifies alternat[ive] solutions and analyzes/compares alternative acquisition approaches or products based on cost, risk and capability," and contains a recommendation for whether the component will use a federal shared service provider or a commercial shared service provider (no other options were described). Id. ¶ 5; accord id. ¶ 6. This document must then be approved by both the Component Acquisition Executive and the Financial Systems Modernization Executive Steering Committee ("FSM ESC") chair before the component can select a discovery partner from a list of preapproved federal shared service providers. Id. ¶¶ 6-7. Upon the approval of the chosen federal shared service provider, the component and the provider enter the discovery phase, during which the component ascertains whether the approach recommended in the

alternatives analysis is viable. Id. ¶¶ 7-8. At the conclusion of the discovery phase, the component and its partner jointly determine whether to proceed with implementation. Id. ¶ 8. If they decide to proceed, the decision must be approved by at least three other government entities–FSM ESC, the Office of Financial Innovation and Transformation ("FIT") at the United States Department of the Treasury, and OMB–before it is submitted to the DHS Acquisition Review Board for final approval. Id. ¶¶ 8-9. If such approval is obtained, the component can proceed with implementation. Id. ¶ 9.

Plaintiff addressed Mr. Bobich's declaration in its subsequently filed reply, and the court, finding oral argument unnecessary, is prepared to rule.

## II. DISCUSSION

### A. The Court Possesses Discretion to Grant Plaintiff's Motion to Vacate the Court's Decision and for Leave to File an Amended Complaint

In its motion, plaintiff requests that the court vacate its August 26, 2014 Opinion and Order and then allow plaintiff to amend its complaint so as to render its protest not moot. Plaintiff bases its request on Rule 15(a)(2) of the Rules of the United States Court of Federal Claims, which allows parties to amend their pleadings with the court's leave, and indicates that "[t]he court should freely give leave when justice so requires." Plaintiff finds further support for its request in the decision of the United States Supreme Court ("Supreme Court") in Foman v. Davis, 371 U.S. 178 (1962). In that case, the plaintiff filed a complaint in which she alleged a breach of contract. Id. at 179. The district court dismissed the complaint for failure to state a claim upon which relief could be granted. Id. The following day, the plaintiff filed motions to vacate the judgment and to amend her complaint to add an alternative theory of recovery–quantum meruit. Id. The district court denied those motions. Id. On appeal, the Supreme Court explained that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Id. at 182. It therefore held:

> In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be 'freely given.'

Id.

Defendant contends that plaintiff's motion is without merit due to plaintiff's failure to allege an error of law or mistake of fact justifying vacatur. However, in light of the Supreme Court's decision in Foman, this contention is unavailing. There is no suggestion in Foman that the plaintiff's motions were based on an error in the district court's decision. See also id. at 179

(indicating that the plaintiff separately appealed the district court's dismissal of her complaint). Rather, the implication is that the plaintiff's motions were merely aimed at allowing her to pursue a new legal theory. See id. at 182 ("As it appears from the record, the amendment would have done no more than state an alternative theory for recovery."). Accordingly, it is within the court's discretion to grant plaintiff's motion in the absence of an allegation that the court's decision was factually or legally erroneous.

### B. Plaintiff Should Be Given Leave to Amend Its Complaint

To determine if it should exercise its discretion, the court examines whether allowing plaintiff to file an amended complaint is in the interest of justice. Plaintiff argues that none of the possible reasons noted by the Supreme Court in Foman for denying leave to amend a pleading is implicated in this protest. Defendant disagrees, contending that amendment of plaintiff's complaint would be futile because the new claims proposed by plaintiff would be unripe. Upon a review of the parties' briefs, the administrative record, and, most particularly, Mr. Bobich's declaration, the court is unable to conclude that amendment would be futile on ripeness grounds.

#### 1. Ripeness

A claim is not ripe for judicial review when it is contingent upon future events that may or may not occur. Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81 (1985). The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99 (1977).

In determining whether a claim is ripe for judicial review, courts must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Labs., 387 U.S. at 149. The first prong of the ripeness analysis is not satisfied unless "the challenged agency action is final." Tokyo Kikai Seisakusho, Ltd. v. United States, 529 F.3d 1352, 1362 (Fed. Cir. 2008); accord NSK, Ltd. v. United States, 510 F.3d 1375, 1384 (Fed. Cir. 2007) (citing Abbott Labs., 387 U.S. at 149). A final agency action displays two characteristics. "First, the action must mark the 'consummation' of the agency's decisionmaking process–it must not be of a merely tentative or interlocutory nature." Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (citation omitted). "[S]econd, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" Id. at 178 (citation omitted). The second prong of the ripeness analysis is satisfied when the challenged agency action has an immediate, severe impact on the plaintiff. Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 170 (1967).

**2. The Court Cannot Conclude That Amending the Complaint Would Be Futile on Ripeness Grounds**

As noted above, plaintiff asserts that in its amended complaint, it intends to challenge the actions taken by DHS components to modernize their financial management software systems, alleging that those actions violated statute and regulation. In support of its contention that its proposed claims would be ripe, plaintiff originally relied on a February 2013 presentation contained in the administrative record that describes the status of eight DHS components in their modernization efforts. Of particular note, this presentation reflects that the United States Coast Guard and the Transportation Security Administration had completed their alternatives analyses, and that the Domestic Nuclear Detection Office, ICE, and the Federal Law Enforcement Training Centers were in the process of completing their alternatives analyses:

> USCG: Completed core competency study, established business process reengineering team, completed a Course of Action (COA) that determined [shared service provider] as the path forward; briefed OMB and Treasury
>
> TSA: Completed Alternatives Analysis (AA), determined [shared service provider] as the path forward; will brief the FSM ESC in March
>
> DNDO: Working on an AA
>
> ICE: Working on their COA
>
> . . . .
>
> FLETC: Finalizing AA; next step is to brief OMB

Administrative R. 489; see also id. at 492 (suggesting that the initial acquisition phase for a number of DHS components would conclude by the end of fiscal year 2014, i.e., September 30, 2014). Plaintiff interprets the information included in this presentation as evidence that at least some DHS components have decided how to procure a new financial management software system, and have embarked on the procurement process.

Plaintiff found further support for the ripeness of its proposed claims in Mr. Bobich's declaration. Mr. Bobich stated that the alternatives analyses conducted by DHS components would contain a recommendation only for the use of either a federal shared service provider or a commercial shared service provider; no other option was available. This statement is consistent with a memorandum relied upon by Mr. Bobich in his declaration–OMB Memorandum M-13-08, "Improving Financial Systems Through Shared Services"–in which all federal agencies are directed, except in limited circumstances, to use a shared service provider when modernizing

their financial management software systems.[1] Id. at 3589. Further, Mr. Bobich asserted that DHS components would be required to select a discovery partner from a list of preapproved federal shared service providers; he did not indicate that a commercial shared service provider could be selected. Mr. Bobich's assertion is consistent with another memorandum that he relied upon in his declaration–"FIT Agency Modernization Evaluation (FAME) Process, Guidance and Artifacts," attached as an exhibit to plaintiff's reply–which indicates that all federal agencies, when modernizing their financial management software systems, are required to evaluate established federal shared service providers and then migrate their systems to a selected federal shared service provider. Pl.'s Ex. 1 at §§ 1.2, 2.1, 4. As plaintiff notes, it is not a federal shared service provider. And, plaintiff represents that it could not ascertain whether it would be considered a commercial shared service provider–Mr. Bobich did not define the term and plaintiff could not locate any official criteria to be considered a commercial shared service provider. Moreover, even if it would be considered a commercial shared service provider, plaintiff argues, such designation might be irrelevant because according to Mr. Bobich, once a component performs an alternatives analysis, it can only use a preapproved federal shared service provider, disqualifying plaintiff. Ultimately, contends plaintiff, it is clear from Mr. Bobich's declaration that DHS components have already decided to utilize a federal shared service provider when modernizing their financial management software systems, and that they made that decision without adhering to the requirements set forth in subpart 6.3 of the Federal Acquisition Regulation pertaining to "other than full and open competition" and/or subpart 17.5 of the Federal Acquisition Regulation pertaining to "interagency acquisition"; namely, the preparation of a justification or a determination and findings.[2]

In responding to plaintiff's motion, defendant narrowly construes plaintiff's proposed claims, suggesting that plaintiff only seeks to challenge the alleged decisions by the DHS

---

[1] With respect to the limited exception to using a shared service provider, the OMB memorandum provides:

> [A]gency-specific approaches are discouraged and will be considered for funding only in the rare situation in which an agency demonstrates, through its alternatives analysis, that exceptional circumstances exist . . . that make the agency-specific approach clearly preferable to [a shared service provider] solution with respect to what is the best value for the Federal Government.

Administrative R. 3591.

[2] A footnote in the FIT memorandum attached to plaintiff's reply reflects FIT's understanding that the acquisition of financial management software systems using federal shared service providers complies with the pertinent statutes and regulations. Pl.'s Ex. 1 at § 2.1 n.2. FIT's understanding may be accurate. However, plaintiff's proposed claims concern whether DHS and its components complied with those statutes and regulations–an inquiry that necessarily is not addressed by FIT in its memorandum.

components presently using plaintiff's financial management software system to procure new software and related services, and/or DHS's alleged decision to use CBP as the federal shared service provider for all of its components. As noted above, however, plaintiff's proposed claims encompass more than these allegations. Moreover, plaintiff has cited evidence–the existence of completed alternatives analyses–that supports its allegation that at least one DHS component has reached a final decision on how it intends to procure a new financial management software system (i.e., through the use of a shared service provider). Indeed, the memoranda relied upon by Mr. Bobich in his declaration reflect that OMB and FIT have left federal agencies with little option but to pursue the use of a federal shared service provider when modernizing their financial management software systems.

Given the substance of plaintiff's proposed claims and the evidence cited in support of them, plaintiff may be able to assert a viable, ripe claim that DHS, or one of its components, violated a "statute or regulation in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b)(1) (2012). This conclusion terminates the court's inquiry, because a plaintiff seeking to overcome an argument that the filing of an amended complaint would be futile need only establish that its proposed amendment "states a claim on which relief could be granted," and offer "sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion." Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V., 464 F.3d 1339, 1355 (Fed. Cir. 2006).[3] Plaintiff has satisfied this burden and therefore, in the interest of

---

[3] Kemin Foods, L.C. is a decision of the United States Court of Appeals for the Federal Circuit ("Federal Circuit") in a patent case. See generally 464 F.3d at 1339-56. When the Federal Circuit decides an issue in a patent case that does not involve patent law, it typically applies the law of the circuit in which the patent case arose. Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1359 (Fed. Cir. 1999) (en banc in relevant part), abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 28 (2001); Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc., 856 F.2d 173, 175-76 (Fed. Cir. 1988). Normally, the Federal Circuit's rulings on nonpatent issues in patent cases are not binding on the United States Court of Federal Claims ("Court of Federal Claims") because they are not considered to be the law of the Federal Circuit. United Med. Supply Co. v. United States, 77 Fed. Cl. 257, 265 (2007); cf. Exxon Corp. v. United States, 931 F.2d 874, 877 n.4 (Fed. Cir. 1991) (noting that while it applied regional circuit law regarding a procedural issue in a decision in a patent case, the regional circuit law it applied was "commonly accepted in federal jurisprudence, and should be considered the law of the Federal Circuit as well"). In Kemin Foods, L.C., the Federal Circuit applied the procedural law of the United States Court of Appeals for the Eighth Circuit. See 464 F.3d at 1354-55. If the standard that the Federal Circuit described in that decision is deemed inapplicable in this case, the court would apply the standard articulated in other decisions of the Court of Federal Claims:

> When futility is asserted as a basis for denying a proposed amendment, . . . courts simply decide whether a party's proposed amendment is facially meritless and frivolous, i.e., "Where futility is proposed as a basis for denying amending a

justice, should be given leave to file an amended complaint.[4]

### C. The Court Declines to Vacate Its August 26, 2014 Opinion and Order

Although the court is granting plaintiff's request to file an amended complaint in this bid protest, it is not prepared to vacate its August 26, 2014 Opinion and Order. As defendant correctly notes, plaintiff does not allege any error in the court's decision declaring the claims in plaintiff's complaint moot. And, the court knows no reason why its decision should be set aside–plaintiff's claims were rendered moot by the OHA's corrective action. Accordingly, rather than vacating the entire decision, the court will strike the language from the conclusion of that decision directing the entry of judgment. This same language will be omitted from the version of the August 26, 2014 Opinion and Order that is being released to the public contemporaneously with this ruling.

## III. CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART** plaintiff's motion to vacate the court's August 26, 2014 Opinion and Order and for leave to amend its complaint. The court **DENIES** plaintiff's motion to vacate, and instead **STRIKES** the following language from its decision: "No costs. The clerk is directed to enter judgment accordingly." In addition, the court **GRANTS** plaintiff's motion for leave to file an amended complaint. Plaintiff shall file its amended complaint **no later than Friday, December 12, 2014**. Once the amended complaint is filed, the court will contact the parties to schedule a status conference to discuss further proceedings. Finally, the court **DENIES** as moot plaintiff's alternative motion to amend the protective order.

---

> complaint, courts will discern whether a pleading is frivolous and insufficient on its face or has been adequately addressed in the prior complaint."

St. Paul Fire & Marine Ins. Co. v. United States, 31 Fed. Cl. 151, 155 (1994) (quoting Alaska v. United States, 15 Cl. Ct. 276, 280 (1988)); accord Katzin v. United States, 115 Fed. Cl. 618, 622 (2014); Delpin Aponte v. United States, 83 Fed. Cl. 80, 91 (2008); Browder v. United States, 79 Fed. Cl. 178, 181 (2007). This standard imposes a less exacting burden on the party seeking to amend a pleading–one that plaintiff readily satisfies.

[4] To be clear, the court does not conclude that plaintiff's proposed claims are ripe or are otherwise viable or meritorious. The court merely concludes that there are sufficient facts, at this time, to overcome defendant's contention that amending the complaint would be futile.

      The court has filed this ruling under seal. The parties shall confer to determine agreed-to proposed redactions. Then, by **no later than Friday, December 12, 2014**, the parties shall file a joint status report indicating their agreement with the proposed redactions, **attaching a copy of those pages of the court's ruling containing proposed redactions, with all proposed redactions clearly indicated**.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge